STRANCH, Circuit Judge,
concurring.
I reluctantly concur with the lead opinion’s determination that collateral estoppel applies, I write separately to express concern about the state court decision that underpins the federal court’s collateral es-toppel ruling. I believe that the state court decision was based on a legal principle that both our circuit and Michigan state courts have rejected.
Because the circumstances of this case play a role in my concern about the state court decision, I begin with an explanation of additional facts. On July 3, 2010, while driving northbound on Allen Road in Wayne County, Michigan, Billy Rayfield was struck head-on by a southbound Chevrolet Camaro. Rayfield was driving a 1923 Ford T-Bucket Roadster, a collectible car that is not equipped with seatbelts, and was thrown approximately 10 feet from the car upon impact. The driver of the Cama-ro failed three tests of sobriety at the scene of the accident and was ultimately charged with operating a vehicle under the influence of liquor or drugs.
Rayfield was rushed to Oakwood Hospital, where his doctors performed emergency surgery and two blood transfusions. He was hospitalized for two months, remaining in a coma for a period of time. Upon release, Rayfield called ARIC and *539 was informed that it had not received a renewal payment and that his policy had lapsed.
Although ARIC did not have a record of Rayfield’s payment, Rayfield testified that he sent a money order to ARIC in April 2010.[1] Rayfield kept all documents related to the car, including his insurance information, in a shoebox under his car seat. His receipt for the money order was lost in the accident, because the crash ripped this seat from his car and soaked most of his belongings in gas. Police officers disposed of the shoebox before impounding his car.
Rayfield purchased the money order at a local party store. He attempted to obtain a copy of the receipt after the accident, but the party store told him that they could not do so without the receipt number. Upon returning to the party store, Rayfield found it had gone out of business.
Several weeks after mailing the money order, Rayfield says, ARIC sent him a certificate of no-fault insurance. A copy of the certificate, which Rayfield provided with his summary judgment briefing, says that the certificate was issued on March 27, 2010 and expires on March 27, 2011. Laura Marakovits, a claims supervisor at ARIC, testified that this certificate was included in a renewal packet sent in January 2010. She conceded, however, that ARIC does not have proof that the renewal packet was in fact sent to Rayfield in January 2010; she could only testify to ARIC’s general practice of doing so. The certificate itself does not indicate that it is not yet valid or that its validity is conditional pending receipt of payment of a renewal premium.
Both the state and federal cases turned on the same factual dispute: Did Rayfield renew his auto-insurance policy with ARIC prior to the accident? In my view, Ray-field’s testimony that he mailed the renewal payment to ARIC, together with the seemingly-valid no-fault insurance certificate, was sufficient to create a genuine dispute of fact as to this question. The first state court judge reached this conclusion and denied summary disposition. But the second state court judge concluded otherwise. Considering the same evidence, Judge Sheila Gibson found that Rayfield’s “uncorroborated and self-serving testimony” was “insufficient, as a matter of law, to create a material issue of fact.”
Judge Gibson does not cite any authority for this proposition, even though it is the fundamental building block of her decision. In all likelihood, that’s because Michigan does not have any such rule. The Michigan summary disposition standard tracks the federal summary judgment standard. See Barnard Mfg. Co. v. Gates Performance Eng’g, Inc., 285 Mich.App. 362, 379, 775 N.W.2d 618, 628 n. 7 (2009) (“Because our court rules are patterned after the federal court rules, in the absence of state authority, this Court may consider federal authorities that interpret analogous provisions of the federal rules.” (internal citation omitted)); id. at 378, 775 N.W.2d at 628 (citing federal caselaw “under the analogous provisions of [Rule 56]”); Karbel v. Comerica Bank, 247 Mich.App. 90, 95-97, 635 N.W.2d 69, 73 (2001) (noting *540 that Mich. Comp. Laws § 2.116 “is modeled in part on Rule 56(e) of the Federal Rules of Civil Procedure”); Baxter v. Lapeer Health Servs. Corp., No. 175482, 1996 WL 38324078, at *3 (Mich.Ct.App. July 19, 1996) (observing that that § 2.116(C)(10)— the section of § 2.116 that permits summary disposition when there is “no genuine issue as to any material fact” — “is derived word for word from corresponding [federal Rule 56],” and relying on federal advisory committee commentary).
At the federal level, we have “explicitly found that a plaintiff’s testimony is itself sufficient to create a genuine issue of material fact.” Moran v. Al Basit LLC, 788 F.3d 201, 206 (6th Cir.2015). We have also held that “[a] court may not disregard evidence, including the plaintiffs own testimony, merely because it serves the interests of the party introducing it.” Harris v. J.B. Robinson Jewelers, 627 F.3d 235, 239 (6th Cir.2010). Consistent with these federal cases, when Michigan circuit courts have granted summary disposition on the ground that the only evidence was “self-serving” testimony, at least two Michigan appeals courts have reversed. See Esshaki v. Milkman, No. 283297, 2009 WL 692451, at *3 (Mich.Ct.App. Mar. 17, 2009); Sarkis v. Cincinnati Ins. Co., No. 280860, 2008 WL 4891487, at *2 (Mich.Ct.App. Nov. 13, 2008). Accordingly, I think that Judge' Gibson’s decision rests on an erroneous legal principle — indeed, a principle that would improperly result in summary dismissal of any case in which the plaintiff must rely on his or her own testimony to prove the claim.
Although Judge Gibson does not cite any authority, her error might stem from a misunderstanding of the rule related to affidavits that contradict a party’s earlier testimony. Michigan courts have held that a party’s “subsequent affidavit, which contradicts [their] deposition testimony, is self-sewing and cannot create a genuine issue of material fact.” Brow v. Zenith Data Sys. Corp., No. 202842, 1998 WL 1991617, at *6 (Mich.Ct.App. June 5, 1998) (emphasis added); see also, e.g., Downer v. Detroit Receiving Hosp., 191 Mich.App. 232, 234, 477 N.W.2d 146,147 (1991) (“Parties may not create factual issues by merely asserting the contrary in an affidavit after giving damaging testimony in a deposition.”). We too have held that “[a] directly contradictory affidavit should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction.” Aerel, S.R.L. v. PCC Airfoils, L.L.C., 448 F.3d 899, 908 (6th Cir.2006). Neither our cases nor the Michigan cases in any way suggest that a plaintiffs own testimony is insufficient, as a matter of law, to create a genuine dispute of material fact. Rather, they hold that if the plaintiffs testimony is consistent, it must be considered at summary judgment. See, e.g., Dye v. Office of the Racing Comm’n, 702 F.3d 286, 308 (6th Cir.2012) (declining to strike affidavit because the opposing party had not shown that “the .affidavit directly contradicts the deposition testimony or that the affidavit was effectuated for the purpose of creating a sham issue of fact”).
In his interrogatory responses and two depositions, Rayfield repeatedly and consistently testified that he paid the renewal premium. At summary judgment, he also provided a certificate of no-fault insurance from ARIC, which, according to his testimony, he received after paying the renewal premium. ARIC has a different version of events (for instance, they claim that under their procedures, the certificate of no-fault insurance would have been included in a renewal packet sent in January 2010), but they have not shown that the testimony on which Rayfield relies contradicts his earlier testimony. Absent this showing, Rayfield’s testimony and certifi *541 cate of no-fault insurance were sufficient to create a genuine dispute of material fact. The first state court judge reached this conclusion. Judge Gibson should have as well.

. The lead opinion notes that "Rayfield testified that he sent a money order to ... 11222 Quail Roost Drive, Miami, Florida,” and that he "does not dispute that this was not the address or entity to which he was instructed to remit payment.” The director of operations accounting at ARIC, however, testified that "procedures were in place to address the situation of a check or money order in payment of a renewal premium for an ARIC insurance policy, issued by [ACI], being received in the mail at 11222 Quail Roost Drive, Miami, Florida.” (R. 20-14, at PagelD 317.)